NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J & H INTERNATIONAL,<br><br>                        Plaintiff,<br><br>    v.<br><br>KARACA ZUCCIYE TIC. SAN A.S.<br>Doing business as KRC, and<br>KRC,<br><br>                        Defendants. | Civil Action No. 2:10-CV-03975<br>(SDW)(MCA)<br><br><br><br>OPINION<br><br><br><br>October 3, 2012 |

**WIGENTON**, District Judge.

Before this Court is Defendant Karaca Zucciye Tic. San A.S.'s motion to vacate a default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). Also before this Court is Defendant's motion to dismiss Plaintiff J & H International's complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), (5), and *forum non conveniens*. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' motion in part and **DENIES** it in part.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff J & H International ("J & H") is suing Defendant corporation Karaca Zucciye Tic. San A.S., doing business as KRC ("KRC") and KRC, for failure to perform on a contract, for breach of a contract for sale of goods, and for breach of the implied covenant of good faith and fair dealing. (*See* Compl. ¶¶ 1-2, 24-43.) Plaintiff is a New Jersey corporation, with its

primary place of business in Morris Plains, New Jersey. (*See id.* ¶ 1.)  KRC is a corporation formed under the laws of Turkey, with its primary place of business in Istanbul, Turkey. (*See id.* ¶¶ 2-4.) On or about April 21, 2008, J & H, a designer and seller of flatware, agreed to sell KRC stainless steel forks, knives, and spoons stamped or etched with KRC's name for US $2,619,000.00. (*See id.* ¶¶ 7, 10.)

Between July 2008 and November 20, 2008, J & H shipped KRC's entire order of finished flatware in successive portions from J & H's factory in China. (*See id.* ¶ 9.) By January, 2009, KRC had received the entire order and had not reported any shortages. (*See id.*) However, in February and April of 2009, KRC complained to J & H about manufacturing defects allegedly present in multiple shipments of flatware, and requested permission to return the shipments for repair. (*See id.* ¶¶ 11-12, 16.) J & H granted $1,167,136.00 in price offsets to KRC in the form of credits on other, non-defective, shipments that KRC had received. (*See id* ¶ 19.) J & H alleges that the understanding between the parties at the time was that any price offsets granted for quality issues would balance out any damages KRC incurred[1] and J & H would receive full payment for all shipments, once it received the alleged defective cutlery back at the manufacturer, polished the flatware anew, resent it to KRC, and KRC accepted the cured shipment as a finished product. (*See id.*¶ 14.)

Across the table, KRC demanded reimbursement from J & H for US $437,939.00 which KRC had allegedly paid in import duties and value added taxes on the defective goods before it would return the goods to J & H. (*See id.* ¶¶ 20-21.)  However, it is J & H's understanding that under "Turkish import duty law, [] KRC would not owe any import duty or tax on the refinished goods returning to Turkey." (*Id.* ¶ 21.) The parties failed to reach a compromise or agreement

---

[1] While most of the offsets were believed to have balanced out any damages KRC would have incurred, there was $180,982.56 of the total balance of offsets, which Plaintiff alleges was granted not as compensation for a craftsmanship issue, but as funding to help KRC get two flatware shipments "out of port." (Compl. ¶ 17.)

2

regarding the import tax. (*See id.* ¶ 22). As a result, KRC has retained possession of the defective goods in Turkey, and the offsets J & H granted KRC to serve as compensation until the flatware is refinished have not been repaid. (*See id.* ¶¶ 22-23.)

On August 8, 2011, this Court entered a default judgment against KRC, in the amount of $1,167,136.00, for failure to appear pursuant to Federal Rules of Civil Procedure Rule 55(a) and 55(b)(1). (*See* Dkt . No. 17.) On June 17, 2012, KRC submitted a motion for an Order vacating the entry of a default judgment pursuant to Fed. R. Civ. P. 55(c) and 60(b). (*See* Dkt. No. 19.) In the motion, KRC additionally asked the Court to dismiss J & H's complaint "pursuant to Fed. R. Civ. P. 12(b)(2), (5) and *forum non conveniens* grounds." (*Id.*)

## II. LEGAL STANDARD

### a. *Motion to Vacate*

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause, and . . . may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). A court may set aside a default judgment pursuant to Rule 60(b) for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, ... misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The "decision to set aside . . . a default judgment pursuant to [Rule 60(b)] is left primarily to the discretion of the district court." *See United States v. $55,518.55 in U.S. Currency,* 728 F.2d 192, 194 (3d Cir. 1984) (footnote and internal citation omitted). Generally, default judgments are disfavored by courts. *See id.* at 194. In deciding a motion to vacate a default judgment, "a standard of 'liberality,' rather than 'strictness' should be applied . . . and . . . '[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases

3

may be decided on their merits.'" *Medunic v. Lederer*, 533 F.2d 891, 893-94 (3d Cir. 1976) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245-46 (3d Cir. 1951)). Furthermore, "'matters involving large sums should not be determined by default judgment if it can reasonably be avoided' since 'the interests of justice are best served by a trial on the merits.'" *Livingston Powdered Metal, Inc. v. NLRB*, 669 F.2d 133, 136-37 (3d Cir. 1982) (quoting *Tozer*, 189 F.2d at 245). Here, KRC has not specified the particular section under Rule 60(b) upon which the motion is brought; however, construing KRC's motion liberally, KRC appears to base its motion on the first subsection.

"'[I]n exercising its discretion in granting or denying a motion to set aside a . . . default judgment under Rule 60(b)(1),' [a] district court should consider: '(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct.'" *United States v. $90,745.88 Contained in Account Number 9506826724 Held in the Name of and/or for the Benefit of AmiriMbubu Auto Sales, LLC., at Bank of America, 1125 Rt. 22 W., Bridgewater, New Jersey 08807*, 465 F. App'x 143, 145 (3d Cir. 2012) (citing *$55,518.55 in U.S. Currency*, 728 F.2d at 195). Although determining whether a defendant has a meritorious defense is listed as the second factor, the Third Circuit Court of Appeals as well as district courts within the circuit have consistently acknowledged that consideration of the second factor is a threshold issue. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*. 175 F. App'x 519, 522 (3d Cir. 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984)). Therefore, here, the second factor will be examined first.

b. *Insufficient Service of Process*

When bringing a motion to dismiss for insufficient service of process, "[t]he party making the service has the burden of demonstrating its validity[.]" *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. 02-6030, 2006 WL 1084093, at *2 (D.N.J. April 24, 2006) (internal citation and quotation marks omitted). "If service of process was not sufficient, the Court has discretion to dismiss the action[.]" *Id*. "Service upon foreign defendants is governed by Rule 4(f), which requires that service be made in the manner prescribed by the Hague Convention or by foreign law . . ." as detailed below. *Id*.

c. *Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state where the district court sits." *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). New Jersey's long-arm statute permits personal jurisdiction over non-resident defendants to the extent allowed by the Due Process Clause of the Fourteenth Amendment. N.J. Ct. R. 4:4-4; *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 284 (3d. Cir. 1981), *cert. denied*, 454 U.S. 1085 (1981). Therefore, this Court's analysis is strictly limited to determining whether personal jurisdiction over Defendants is proper and comports with due process. This Court is guided by the two-part analysis delineated in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). First, this Court must determine whether minimum contacts exist between Defendant and the forum state. *See id.* at 476-77. If this Court finds that the requisite minimum contacts are present, it must then consider whether the exercise of personal jurisdiction would nevertheless

offend "traditional notions of fair play and substantial justice" inherent in the Due Process Clause. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). [2]

Where a defendant files a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating, with "reasonable particularity," that a defendant's minimum contacts with the forum state are sufficient to establish personal jurisdiction. *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 145-46 (3d Cir. 1992); *Time Share Vacation v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). When a plaintiff's burden is triggered before discovery has commenced, plaintiff need only proffer a prima facie case to establish personal jurisdiction. *See LaRose v. Spondo Mfg., Inc.*, 712 F. Supp. 455, 458 (D.N.J. 1989). Only upon the plaintiff demonstrating sufficient minimum contacts between a defendant and the forum state may this Court consider whether exercise of jurisdiction would comport with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l. Shoe*, 326 U.S. at 320); *Pennzoil*, 149 F.3d at 201. In reviewing a motion brought under Federal Rule of Civil Procedure 12(b)(2), a court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Cartaret*, 954 F.2d at 142 n.1.

   d. *Forum Non Conveniens*

Pursuant to the doctrine of *forum non conveniens*, a court may refuse to hear a case despite having jurisdiction if doing so would better serve the parties' convenience and would be in the interest of justice. *See Gulf Oil Corp v. Gilbert*, 330 U.S. 501, 504 (1947). Analysis of a

---

[2] This Court takes notice that a plaintiff may also seek personal jurisdiction on a general basis based on a defendant's "continuous and systematic" contacts with the forum state. *Int'l. Shoe Co.*, 326 U.S. at 317; *see also Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587 (3d Cir. 1982). However, where, as here, Defendants are alleged to have never entered the State of New Jersey, Plaintiff's cause of action can arise only "out of [Defendants'] contacts with the forum . . . [thereby requiring this Court] . . . to exercise 'specific jurisdiction.'" *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)).

*forum non conveniens* argument requires consideration of three elements: (1) the availability of an adequate alternative forum; (2) the amount of deference due to the plaintiff's choice of forum; and (3) the balance of the private and public interest factors. *See Chigurupati v. Zenotech LLC*, No. 11–3429, 2012 WL 1743097, at *1 (3d Cir. May 17, 2012); *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989).

## III. DISCUSSION

### a. Motion to Vacate Default Judgment

#### i. Meritorious Defense

"The showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.'" *$55,518.55 in U.S. Currency*, 728 F.2d at 195 (citing *Tozer*, 189 F.2d at 244). A defendant's allegations must be specific. *See $90, 745.88 Contained in Account Number,* 465 F. App'x 143, 145 (3d Cir. 2012) (citing *$55,518.55 in U.S. Currency*, 728 F.2d at 196). Simple denials or conclusionary statements will not suffice because "'[d]efault judgments cannot be set aside simply because of . . . ambiguous conclusions'" or "threadbare assertions[.]" *Id.* Once a defendant sets forth the grounds for his defense, the court is charged with evaluating whether the defense shows promise. *See Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 522 (3d Cir. 2006).

Here, KRC asserts three defenses: (1) the fact that J & H provided KRC with defective goods and that KRC rejected the goods, (2) this Court's lack of personal jurisdiction, and (3) *forum non conveniens*. (*See* Defs.' Br. 13-14.) J & H counters by contending that KRC is incapable of establishing a meritorious defense because case law requires a meritorious defense be set forth in a defendant's answer, and here KRC has not filed one. (*See* Pl.'s Br. 23.) While J

7

& H's argument is reasonable given the well-settled elements of a vacating a default judgment, Third Circuit case law makes it evident that a defendant's assertion of a defense need not be set forth in an answer. *See Haugh v. Myer*, No. CIV. A. 06-2975 (JHR), 2007 WL 496815 (D.N.J. Feb. 13, 2007) ("Even though Defendants have not answered Plaintiffs' complaint, they have laid out a defense in their motion to vacate the default….Therefore, Defendants can show a meritorious defense."); *Royal Ins. Co. of Am. v. Packaging Coordinators, Inc*., No. CIV. A. 00-3231, 2000 WL 1586081,* 1 (E.D. Pa. Oct. 24, 2000) ("To assess [whether defendant alleged fact which could constitute a meritorious defense], the court may examine the defendant's answer, or if none was filed, the allegations in its motion to vacate the default judgment[.]" (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987)). If this were not the case, motions to vacate default judgments concerning failures to answer a pleading would be per se denied. J & H also contends that KRC has not set forth a meritorious defense because KRC has not proffered any proof that the goods in question were defective. (*See* Pl.'s Br. 22.) J & H's second argument is misplaced as proof of allegations by either party is not required at this stage of the litigation between the parties.

Regarding KRC's defenses, KRC's first alleged defense, if established at trial, would constitute a complete defense. KRC has alleged and J & H admitted in its complaint that the flatware was defective. (*See* Defs.' Br. 13, Compl. ¶ 12.) KRC also alleged and J & H also admitted in its complaint that KRC rejected the goods upon learning of the defects, and offered to return the flatware to J & H. (*See id.*) This Court is satisfied that J & H has alleged specific facts that would constitute a complete defense if proven at trial.[3]

### ii. Lack of Culpability

In considering a defendant's culpability, *Pioneer Inv. Services. Co. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 395 is controlling. *Pioneer* states in pertinent part that

---

[3]KRC's showing of a meritorious defense on this basis alleviates this Court's need to discuss KRC's additional proffered defense.

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable', we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.  These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Ins. Servs.* Co., 507 U.S. at 395.  In order for a defendant to be culpable for a default, more than mere negligence must be present.  *See Nationwide Mut. Ins. Co.*, 175 F. App'x at 523 (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984)).  "Reckless disregard for repeated communications from [a plaintiff] and the court . . . can satisfy the culpable conduct standard." *Hritz*, 732 F.2d at 1183.  Generally, "lawyer's errors, the type which usually provide for 'successful malpractice suits by the injured client' do not fall under the excusable neglect standard." *Reckling v. Okechuku*, No. 07-1699 (GEB), 2007 WL 2473831, * 6 (D.N.J. Aug. 27, 2007) (citing *McCurry v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.2d 586, 595 (6th Cir. 2002)). Nonetheless, parties should only be penalized for the negligence of their attorney in "extreme or unusual cases."  *Electric Realty Assoc. v. M.H. Speer*, No. 87-6334, 1988 WL 68739 at * 2 (E.D. Pa. June 28, 1988).

Here, KRC was notified about the commencement of this action; however, KRC failed to file an answer or participate in this case due to advice from a Turkish lawyer.  (*See* Defs.' Br. 27.)  The Turkish lawyer advised KRC that since: (1) KRC is a Turkish company, (2) service of process was defective, and (3) the goods in dispute were located in Turkey, the case would have to be adjudicated in Turkey and KRC should commence an action in Turkey.  (*See id.*)  KRC contends that in reliance on this advice, it commenced a suit in Turkey and was unaware of its obligation to cooperate with J & H's lawsuit in the U.S.  (*See id.*)  KRC's reliance on the Turkish attorney was not unreasonable, and does not constitute inexcusable or culpable conduct as it was not in bad faith.

      iii.  <u>Prejudice</u>

In the context of a motion to vacate a default judgment, prejudice is established when a plaintiff's "ability to pursue the claim has been hindered . . . [by circumstances such as,] loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment*.*" *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982).  "Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Id.* at 656-57 (citing *Tozer*, 189 F.2d at 246).  Here, J & H argues that it has been and will be prejudiced if the default judgment is vacated because of the alleged financial strains it suffers as a result of KRC's refusal to return the allegedly defective goods.  In light of the case law set forth above, Plaintiff has not made a sufficient showing that it will be prejudiced if the default judgment is vacated.

    b.  *Improper Service*

Regarding service of process on a foreign entity, Federal Rule of Civil Procedure 4 authorizes process to be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention ["Convention"] . . . ." Fed. R. Civ. P. 4(f)(1); *see also* Fed. R. Civ. P. 4(h)(2).  The Supreme Court has held that "compliance with the Convention is mandatory in all cases to which it applies[.]" *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988). Both the United States and Turkey are signatories to the Hague Convention.  *See EOI Corp. v. Med. Mktg. Ltd.*, 172 F.R.D. 133, 135, 138 n. 13, 141-42 (D.N.J. 1997). "The Hague Convention requires each [signatory] country to establish a central authority to receive requests for service of process*." Zions First Nat'l Bank v. Moto Diesel Mexicana, S.A., de C.V.*, No. 08–10528, 2011

WL 2669608, at * 1 (E.D. Mich. July 07, 2011) (citing *Volkswagenwerk*, 486 U.S. at 698). "The central authority then serves the documents in accordance with the law of that country." *Id.* The Convention also allows for service by alternate means, including personal service or service by mail "[p]rovided the State of destination does not object." Hague Service Convention art. 10, Nov. 15, 1949, 20 U.S.T. 361; *see also Volkswagenwerk*, 486 U.S. at 699. Turkey, however, objected to alternate forms of service when it became a signatory of the Convention. *See EOI Corp.*, 172 F.R.D. at 138 n.13.

Here, KRC contends that service was improper because the person on whom service was made, Ms. Gamze Gölbaşl, a former receptionist for KRC, was allegedly not suitable to receive service. (*See* Def.'s Br. 8-9.) Specifically, KRC argues that under Turkish law, service of process on a company must be made by serving "an authorized person that is entitled to act on behalf of the company and who has been officially deemed a 'signatory' in writing by the company." (*Id.* at 8.) KRC further contends that if service is made in any other manner, service is deficient. (*See id.*) KRC argues that because service was made on Ms. Gamze Gölbaşl, service was improper. (*See id.* at 9.) Contrarily, J & H contends that service was proper because it complied with Federal Rule of Procedure 4 and with the Hague Convention. J & H's argument is persuasive.

KRC's exception with J & H's service of process concerns the suitability of the person served, not J & H's compliance with the federal rules or the Hague Convention. The purpose of a central authority, one of many, is to "monitor and ensure proper service." *EOI Corp.*, 172 F.R.D. at 136. J & H fulfilled its burden by complying with the relevant statutes. Therefore, KRC's argument is misplaced.

### c. *Lack of Personal Jurisdiction*

Personal jurisdiction is established through a minimum contacts analysis when the defendant is not present in the forum. *Int'l Shoe Co.*, 326 U.S.at 316. A defendant is subject to suit in the forum if the defendant purposely conducted acts towards a forum and the claim arises out of that purposeful conduct. *See id*. at 319; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's minimum contacts with the forum must be of sufficient quality and nature so that a suit in the forum does not offend "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co*. 326 U.S. at 316, 319 (citations omitted); *Denckla*, 357 U.S. 235, 253. That is, in order to establish personal jurisdiction the plaintiff must establish that: (1) defendant had minimum contacts with the forum, and (2) based on those contacts a court's exercise of specific jurisdiction "would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 320).

### i. Minimum Contacts

The benchmark for exercising personal jurisdiction is whether a defendant's "conduct and connection with a forum State are such that [it] should reasonably anticipate being haled into court [in said forum]." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The reason for this test is to ensure that a defendant "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts or of the 'unilateral activity of another party or a third person[.]'" *Burger King Corp.*, 471 U.S. at 475 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1980), *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417. Therefore,

> where [a] defendant . . . has created 'continuing obligations' between [itself] and residents of the forum, [it] manifestly has availed [itself] of the privilege of conducting business there and because [its] activities are shielded by 'the benefits

12

> and protections' of the forum's laws it is presumptively not unreasonable to require it to submit to the burdens of litigation in that forum as well.

*Id.* at 475-76 (internal citations omitted).

KRC argues that it does not have minimum contacts with New Jersey as it is not a corporation authorized to do business in New Jersey, has no retail stores therein, does not export goods to New Jersey, has no employees in New Jersey, does not advertise in New Jersey, has not directed any employees to travel to New Jersey, and has no email address, phone numbers, physical address or mailing address in New Jersey. (*See* Defs.' Br. 17-18.) Additionally, KRC maintains that its contract with J & H is not enough to establish minimum contacts with New Jersey. (*See id.* at 18 (citing *Burger King Corp.*, 471 U.S. at 462).) Karaca's argument, however, does not address the benchmark test enumerated by the Supreme Court. While KRC is correct that a contract alone does not "automatically establish sufficient minimum contacts in [another] party's home forum", a court's analysis does not stop with the existence of a contract. *Grand Enter. Grp., LTD*, 988 F.2d at 482. Courts are to also consider "prior negotiations and contemplated future consequences." *Burger King Corp.*, 471 U.S. at 479.

KRC's contractual relationship with J & H is such that it should reasonably anticipate being haled into court in New Jersey. By contracting with J & H, KRC created continuing obligations between the parties, thereby availing itself of the privilege of conducting business in New Jersey. Furthermore, the contemplated future consequence of the contract was arguably an ongoing relationship given that the contract produced multiple shipments and communications between the parties. Moreover, since the inception of the relationship between the parties, J & H's offices have been in Morris Plains, New Jersey, and KRC's principal contacts with J & H are both employees from J

13

& H's New Jersey office.  (*See* Pl.'s Br. 29.)  Additionally, there exist numerous emails between KRC and J & H that were sent to J & H's New Jersey office. (*See id.*)  Therefore, KRC did purposefully conduct acts towards New Jersey and it is apparent that J & H's claims arise from KRC's purposeful conduct.  However, more glaring than the effects of KRC's contacts is the effect of KRC's conduct.  KRC cannot earnestly argue that it did not anticipate or contemplate the possibility of being haled into court in New Jersey after having withheld possession of J & H's allegedly defective goods

> ii.  Fair Play and Substantial Justice

Once a court finds that minimum contacts exist, the burden shifts to the defendant to demonstrate that exercise of jurisdiction does not comport with fair play and substantial justice. *See Carteret Sav. Bank, F.A.*, 954 F.2d at 150.  "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Grand Enter. Group, Ltd.*, 988 F.2d at 483. "To determine whether a defendant has made his case, a district court must consider (1) the burden on the defendant; (2) the interests of the forum state; and (3) plaintiff's interest in obtaining relief." *Fiscus v. Combus Finance AG*, No. 03-1328 (JBS), 2006 WL 1722607 * 8 (D.N.J. June 20, 2006).  In cases involving a foreign defendant, "[t]he United States Supreme Court has recognized that defending a lawsuit in a foreign land is a burden that should be considered." *Grand Enter. Group, Ltd.*, 988 F.2d at 483 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987).  Nonetheless, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi*, 480 U.S. at 114.

Here, regarding the forum's interest in adjudicating this matter, the Supreme Court has noted that "[a] State generally has a 'manifest interest' in providing its residents with a convenient

forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp.*, 471 U.S. at 473 (citations omitted).  Concerning J & H's interest in obtaining relief, J & H clearly has an interest in retrieving its goods.  KRC has not set forth an argument regarding its burden in having to litigate a matter in the United States. Nonetheless, since minimum contacts have been established, J & H's interest and the forum's interest would likely outweigh KRC's.

        d. *Forum non Conveniens*

In deciding a motion to dismiss for *forum non conveniens*, a district court must: (1) "[decide] whether an adequate alternative forum exists to hear the case," (2) "evaluate the amount of deference due to the plaintiff's choice of forum," and (3) "consider and balance the private and public interest factors[.]" *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295 (3d Cir. 2010).  The private interest factors include

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The public interest factors include

> the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)(citing *Gulf Oil Corp.*, 330 U.S. at 501).

i. Adequate Alternative Forum

In order for KRC to show that there is an adequate alternative forum, two conditions must be met: (1) "[KRC] must be amenable to process in the alternative forum" and (2) "the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide J & H with appropriate redress." *Fiscus*, 2006 WL 1722607 at * 12.

Here, KRC argues that Turkey is an adequate alternative forum simply by stating that other courts in this Circuit have found Turkey to be an adequate alternative forum. (*See* Def.'s Br. 23-24; Def.'s Reply Br. 8.) KRC also argues that Turkey is an adequate alternative forum because the contract was executed in Turkey, the flatware was shipped to Turkey, and because at some point in time one of J & H's employees traveled to Turkey to discuss the quality of the flatware. (*See* Def.'s Br. 23-24.) KRC's arguments are deficient as they do not address the elements of an adequate alternative forum. KRC's failure to show the existence of an adequate alternative forum precludes this court from evaluating the remaining two factors in the *forum non conveniens* analysis. Therefore, KRC has failed to meet its burden of showing that New Jersey is an inconvenient forum.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion is **GRANTED** in part and **DENIED** in part.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:    Hon. Madeline Cox Arleo, U.S.M.J.
       Parties